UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| EDWARD B. DOUGLAS,<br><br>    Plaintiff<br><br>v.<br><br>DREAMDEALERS USA, LLC, ROMAIN THIEVEN, and DAVID PERISSET,<br><br>    Defendants | Case No.: 2:17-cv-02134-APG-BNW<br><br>**Order (1) Granting in Part the Defendants' Motion for Summary Judgment and (2) Denying the Plaintiff's Motion for Summary Judgment**<br><br>[ECF Nos. 31, 32] |

Plaintiff Edward Douglas was the chief financial officer (CFO) for defendant Dreamdealers USA, LLC. Douglas applied for and Dreamdealers granted him intermittent leave under the Family Medical Leave Act (FMLA) so he could care for his ailing wife. About a year later, Dreamdealers advised Douglas that it was removing him from the CFO position. The parties dispute whether Dreamdealers thereafter offered Douglas an equivalent position at the company. Douglas has never returned to work at Dreamdealers, although the company still considers him an employee. Douglas claims Dreamdealers and two of its chief executive officers (CEOs), defendants Romain Thieven and David Perisset, interfered with his FMLA rights and retaliated against him for complaining about their unlawful conduct. The parties each move for summary judgment.

I grant the defendants' motion as to Douglas's claim that that the defendants violated the FMLA by failing to respond to his request for recertification of his FMLA leave. I deny the remainder of the defendants' motion and the entirety of Douglas's motion because genuine disputes remain as to whether the defendants interfered with Douglas's FMLA rights and retaliated against him for engaging in protected activity.

## I. BACKGROUND

As Dreamdealers' CFO, Douglas was responsible for accounting, taxes, ensuring the company's books and records were in order, and other similar duties. ECF No. 31-2 at 7-8; ECF No. 31-5 at 8. Perisset and Thieven are Dreamdealers' co-CEOs. ECF Nos. 1 at 2; 5 at 2; 31-2 at 6. Perisset testified that he believed Douglas was doing a good job until sometime in approximately 2014, when Perisset noticed that Douglas communicated with him less frequently and was absent from the office more often. ECF No. 31-2 at 9, 14. Perisset never disciplined Douglas or brought performance issues to his attention, however. *Id.* at 7, 19; ECF No. 31-5 at 8.

In 2015, Ashley Leach, Dreamdealers' human resources manager, suggested Douglas apply for intermittent FMLA leave so he could attend to his wife who was having medical problems. ECF Nos. 31-1 at 2; 31-5 at 24-25. Douglas formally requested FMLA leave on August 19, 2015. ECF No. 31-8.

Leach issued to Douglas a Notice of Eligibility and Rights & Responsibilities form, which stated that he was eligible for FMLA leave. *Id.* The form also stated that due to Douglas's status within the company, he was designated as a "key employee," meaning the company could refuse to restore Douglas to his employment following FMLA leave "on the grounds that such restoration will cause substantial and grievous economic harm" to the company. *Id.* at 3. Dreamdealers marked the form to indicate it had determined that restoring Douglas to employment at the conclusion of FMLA leave would cause substantial and grievous harm to the company. *Id.* ("We _✓_ have/___have not determined that restoring you to employment at the conclusion of FMLA leave will cause substantial and grievous economic harm to us."). Perisset testified that he had not done an analysis in August 2015 that would have supported this

2

determination. ECF No. 32-2 at 9-10. Dreamdealers subsequently approved Douglas's FMLA leave request. ECF No. 31-11.

In October 2015, the State of Nevada Department of Taxation (Department) contacted Douglas to advise him that it intended to conduct a sales and use tax audit on Las Vegas Supercars, a company related to Dreamdealers. ECF No. 31-6 at 2, 10. According to Perisset, Douglas had not informed him about the audit and he found out about it when he noticed a calendar entry for a meeting with a consultant that Douglas had hired. ECF No. 31-2 at 9-10. Perisset subsequently learned that Douglas had stopped paying the sales tax on the company's vehicles. *Id.* at 10-11.

On February 26, 2016, the Department provided the results of its audit and issued a deficiency notice. ECF No. 31-6 at 9-12. The audit found that the "books of record were in disarray," and that an outside consultant was "contracted to compile auditable records when the Department issued notice of audit." *Id.* at 10. The audit concluded that Las Vegas Supercars "did not collect sales tax or remit use tax on either the purchase price of the vehicles or on any form of any revenue streams after 1/1/2014 except for the second and third quarters of 2015, for which no detail could be found." *Id.* As a result, Las Vegas Supercars had to pay the Department $70,047.08. *Id.* at 8-10.

In the weeks after the Department issued its decision, Douglas started applying for jobs at other companies. ECF No. 31-5 at 18-21. Douglas claims the timing was coincidental. *Id.* at 21.

In August 2016, Perisset determined that reinstating Douglas to his position as CFO would injure the company because of Douglas's poor job performance relating to the failure to pay the sales and use taxes and failing to keep the books in order. ECF No. 32-2 at 17, 24. Perisset also stated that injuries would result due to Douglas's absences. *Id.* at 25. In making this

determination, Perisset did not distinguish between absences taken under the FMLA and other absences. ECF No. 31-2 at 25-26. According to Perisset, Douglas had essentially abandoned his job for the prior two years, had ceased communicating with him, and "was not showing up at work a lot." ECF No. 32-2 at 19, 22.

Perisset testified that he was going to have a conversation with Douglas about his performance issues in the months leading up to August 2016, but Douglas was rarely in the office so he could not have that meeting. *Id.* at 20. Perisset also testified that Douglas's absences started long before he applied for FMLA leave and Perisset denied he had any issue with Douglas taking FMLA leave. ECF Nos. 31-2 at 26-27; 32-2 at 26. But he testified he had an issue with non-FMLA absences because he did not "have a CFO on site" so communication was lacking. ECF No. 32-2 at 27. He also stated that the "absences were almost all the time at that point towards the end, FMLA or not," but what triggered the decision not to reinstate Douglas was the financial irregularities. *Id.* at 29.

On August 11, 2016, Leach advised Douglas that his FMLA leave was going to expire on August 16 and that she had put forms to recertify on his desk. ECF Nos. 31-13; 32-8. Leach also told Douglas that he had used 140 hours of FMLA leave during the prior year. ECF No. 31-9. Douglas signed the recertification forms the same day, obtained a certification from a healthcare provider the next day, and returned the forms to Dreamdealers. ECF Nos. 31-14; 31-15; 32-3 at 12; 32-11.

On August 12, Leach wrote to Douglas advising him that Dreamdealers would be removing him from the CFO position. ECF No. 31-12 (the "removal letter"). The removal letter stated that:

> Since August 2015, you have continued to receive full pay and benefits, despite the fact that you have been consistently absent, have failed to notify us when we

4

> can expect your presence in the office, and have failed to account for time spent or tasks accomplished while 'working from home.' As a result, the responsibilities of CFO have been distributed to, and handled by, a number of different employees and departments within the company.
>
> As of August 16, 2016, the conclusion of your leave period under the FMLA, the company will have a position open for you, with similar responsibilities to that of CFO. However, the company has determined that full reinstatement of your position as CFO would cause substantial and grievous economic injury to our operations. Your continued absences and inability to dedicate your full-time efforts to the company would be too great an injury for the company to bear, both from a financial and an operational standpoint.

*Id.* The removal letter does not refer to the audit or the failure to keep the books and records in order. *Id.*

Douglas responded the next day by asking what the new position's duties would be, who he would report to, and whether he would be allowed to work remotely. ECF No. 32-14. Leach replied that the company would prefer to discuss those issues in person and she proposed a meeting for the following Monday. *Id.* Douglas requested they discuss the new position via email. *Id.* He also stated that he noticed that his access to the company's computer system had been restricted, which would affect his ability to perform his job. *Id.*

On August 19, Perisset sent an email to Douglas stating that Douglas was still employed by the company but that Perisset had "not seen [Douglas] at the office for months, nor had any meetings with [him], the CFO of the company." *Id.* at 2-3. Perisset requested a meeting with Douglas and told him to bring along his company laptop and hard drive. *Id.*

Douglas met with Perisset and Leach on August 22 to discuss the fact that he was not going to be retained as CFO and to "explore . . . another position for him." ECF Nos. 31-2 at 39; 31-4 at 28; 32-3 at 16. Perisset had some ideas for the position but "nothing had been defined yet." ECF No. 31-2 at 34. Perisset testified that he contemplated paying Douglas an equivalent salary, although he stated he did not have "a specific amount in mind." ECF Nos. 31-2 at 35; 32-

5

2 at 41. Leach likewise testified that the pay would not have changed, but she did not know whether that was communicated to Douglas. ECF No. 31-4 at 23-24. Douglas was asked for his input about what the new job would entail. *Id.* at 29. The meeting ended with Douglas stating he was going to go home and think things over. *Id.* at 28; ECF No. 31-5 at 37.

No further discussions took place and no decisions were made about the replacement job's pay, responsibilities, or title, because Douglas hired an attorney. ECF Nos. 31-5 at 39; 32-2 at 40-41. Douglas testified that he did not contact the company again because he was told he could no longer work from home and they could not determine a job for him until he guaranteed that he could work at the office for 40 hours per week. ECF No. 38-19 at 5.

Douglas is still employed by the company even though he has not worked there since August 2016. ECF No. 31-4 at 12. The company has treated him as being on a personal leave of absence. ECF No. 31-5 at 41.

## II. ANALYSIS

Summary judgment is appropriate if the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "When the moving party also bears the burden of persuasion at trial, to prevail on summary judgment it must show that the evidence is so powerful that no reasonable jury would be free to disbelieve

it." *Shakur v. Schriro*, 514 F.3d 878, 890 (9th Cir. 2008) (quotation omitted). The burden then shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir. 2000); *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018) ("To defeat summary judgment, the nonmoving party must produce evidence of a genuine dispute of material fact that could satisfy its burden at trial."). I view the evidence and reasonable inferences in the light most favorable to the non-moving party. *James River Ins. Co. v. Hebert Schenk, P.C.*, 523 F.3d 915, 920 (9th Cir. 2008).

### A. Perisset and Thieven

The defendants move for summary judgment as to Perisset and Thieven, arguing there is no evidence Thieven was involved in decisions related to Douglas's FMLA leave and Perisset was not responsible for FMLA-related decisions. Douglas's summary judgment motion did not address the individual defendants' liability and he did not specifically respond to the defendants' motion for summary judgment on this issue.

The FMLA provides a private cause of action against an "employer" who violates the Act. 29 U.S.C. § 2617(a). The FMLA defines employer to "include[] . . . any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer." 29 U.S.C. § 2611(4)(A)(ii)(I). Courts have held this to mean a supervisor may be considered an employer. *See Morrow v. Putnam*, 142 F. Supp. 2d 1271, 1274-75 (D. Nev. 2001) (collecting cases). "[T]hese courts have noted the similarity between the statutory definitions of employer in the FMLA and the Fair Labor Standards Act ('FLSA')." *Id.* at 1274. Both Acts define an employer the same way. *See* 29 U.S.C. §§ 203(d), 2611(4)(A)(ii)(I). The Department of Labor's implementing regulations also recognize the similarity and state that "[a]s under the FLSA,

7

individuals such as corporate officers 'acting in the interest of an employer' are individually liable" for FMLA violations. 29 C.F.R. § 825.104(d).

Because the Ninth Circuit has not explicitly addressed individual liability under the FMLA, but it has done so under the FLSA, I turn to cases interpreting the FLSA for guidance. Under that Act, the definition of employer "is to be given an expansive interpretation in order to effectuate the [Act's] broad remedial purposes." *Lambert v. Ackerley*, 180 F.3d 997, 1011-12 (9th Cir. 1999) (en banc) (quotation omitted). Whether a supervisor or corporate officer qualifies as an employer "does not depend on isolated factors but rather upon the circumstances of the whole activity." *Boucher v. Shaw*, 572 F.3d 1087, 1090-91 (9th Cir. 2009) (quotation omitted). "The touchstone is the economic reality of the relationship." *Id.* (quotation omitted).

Thus, "[w]here an individual exercises control over the nature and structure of the employment relationship, or economic control over the relationship, that individual is an employer within the meaning of the Act, and is subject to liability." *Id.* (quotation omitted). Factors that may demonstrate the adequate control may include a "significant ownership interest with operational control of significant aspects of the corporation's day-to-day functions; the power to hire and fire employees; [the power to] determin[e][ ] salaries;[and the responsibility to] maintain [ ] employment records." *Id.* (quotation omitted).

Perisset and Thievin are the co-owners and co-CEOs of Dreamdealers. ECF Nos. 1 at 2; 9 at 2. Perisset hired Douglas, and Thievin had input into the hiring decision. ECF No. 32-2 at 2-4. Douglas reported to Perisset and Thieven. *Id.* Perisset made the decision to remove Douglas from the CFO position. ECF No. 31-2 at 25. And Perisset was going to be involved in the decision about what new position to offer Douglas. *Id.* at 37-38. Viewing these facts in the light most favorable to Douglas, a reasonable jury could find Perisset and Thievin were Douglas's

8

employers. *See Boucher*, 527 F.3d at 1091 (concluding that allegations of ownership and being an officer plus responsibility for employment matters was sufficient to allege employer status). I therefore deny the defendants' motion as to the individual defendants.

### B. Interference with FMLA Rights

Douglas alleges the defendants interfered with his FMLA rights by considering his FMLA leave as a negative factor in the decision to remove him as CFO. Both parties move for summary judgment on this claim. Douglas argues that the removal letter specifically stated the decision to remove him as CFO was based on his absences and the evidence shows that the defendants did not distinguish between FMLA leave and other absences; thus his FMLA absences were a negative factor in the decision. Douglas also argues that the purported issues with his performance were pretextual because he was never disciplined and, in any event, the FMLA precludes consideration of his leave as a negative factor even if there were other reasons to support the decision. He also argues the defendants cannot rely on their designation of him as a "key employee" because the company did not offer him an equivalent job where there was no job title, duties, or equivalent pay.

The defendants argue that this claim fails because Douglas never took FMLA leave and taking FMLA leave is a required element. They also argue the evidence shows FMLA leave was not a factor in the decision because they approved the leave, were proactive in helping Douglas apply for the leave, and Douglas testified that he did not think his absences were an issue with Perisset. The defendants also contend there is no dispute that they removed Douglas from the CFO position due to his performance failures. Finally, they argue that because Douglas was a key employee, they could remove him and offer him an equivalent job, which Douglas rejected.

/ / / /

### 1. Taking FMLA Leave

The parties dispute whether Douglas must have actually taken FMLA leave to assert an interference claim. They also dispute whether Douglas took any FMLA leave.

The FMLA makes it unlawful "for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this title [and subchapter]." 29 U.S.C. § 2615(a)(1). By the statute's plain language, an attempt to exercise FMLA rights is sufficient. Thus, Douglas need not have actually taken FMLA leave to state an interference claim. Even if this was a requirement, there is evidence from which a reasonable jury could find Douglas took FMLA leave because Leach documented 140 FMLA hours for Douglas. ECF No. 31-9; *see also* ECF Nos. 32-15 (documenting hours taken for FMLA leave); 38-17 (documenting FMLA leave for a particular day); 38-18 (same). I deny the defendants' motion on this basis.

### 2. FMLA Leave as a Negative Factor in the Decision to Remove Douglas as CFO

The parties dispute whether Douglas's FMLA leave was a negative factor in the decision to remove him as CFO. The defendants contend the evidence shows Perisset did not have an issue with Douglas taking FMLA leave and the decision was the result of Douglas's performance failures. Douglas argues the evidence shows all absences, including FMLA-protected absences, factored into the decision and the after-the-fact justification of performance failures is pretextual.

An employer "cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions." *Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1122 (9th Cir. 2001) (emphasis omitted, quoting 29 C.F.R. § 825.220(c)). Proximity in time may be circumstantial evidence that the leave request was a negative factor in the employer's decision. *Xin Liu v. Amway Corp.*, 347 F.3d 1125, 1137 (9th Cir. 2003). But proximity must be considered in factual context. *Coszalter v. City of Salem*, 320 F.3d 968, 978

(9th Cir. 2003). An employer does not violate the FMLA by terminating an employee for performance problems so long as the FMLA leave was not also a negative factor in the decision. *Liston v. Nev. ex rel. its Dep't of Bus. & Indus.*, 311 Fed. Appx. 1000, 1002 (9th Cir. 2009).

Viewing the evidence in the light most favorable to Douglas on the defendants' motion, a reasonable jury could find the defendants considered his FMLA leave as a negative factor in deciding to remove him as CFO. The removal letter specifically referred to absences as the basis for the decision, as did Perisset in his testimony. Perisset also testified that he did not segregate FMLA absences from other absences. A reasonable jury could find that Perisset thus included FMLA absences as well as non-FMLA absences when evaluating Douglas's attendance, and so the FMLA-protected leave was included as a negative factor in the decision. Further, a reasonable jury could conclude that Douglas's job performance was not the only reason he was removed. Perisset never disciplined Douglas or discussed with him issues regarding attendance or a lack of communication prior to Douglas requesting FMLA leave. The removal letter did not reference the audit or that the books were not kept in order as the reasons Douglas was being removed. Instead, it referred to his absences, and a reasonable jury could conclude some of those were FMLA-protected absences. I therefore deny the defendants' motion on this basis.

Viewing the evidence in the light most favorable to the defendants on Douglas's motion, a genuine dispute remains. Perisset denies that he considered FMLA leave as a negative factor. He testified that Douglas's absences and failing job performance preceded his FMLA leave request and that the audit and other failures led to the decision to remove him as CFO. Whether to credit this testimony is a question for the jury. I thus deny Douglas's motion on this basis.

/ / / /

/ / / /

### 3. Key Employee and Alternative Position

The defendants contend Douglas was a key employee whose performance failures led them to decide that keeping him as CFO would substantially injure the company. They also argue they offered Douglas an equivalent position but he chose not to take it. Douglas responds that the evidence shows the FMLA-protected absences are what led to his removal, no equivalent position was ever actually offered because there was no such position, and the offer of an equivalent position was illusory because he was told he could not come back unless he could commit to being in the office 40 hours a week.

"The right to reinstatement guaranteed by 29 U.S.C. § 2614(a)(1) is the linchpin of the entitlement theory because the FMLA does not provide leave for leave's sake, but instead provides leave with an expectation that an employee will return to work after the leave ends." *Sanders v. City of Newport*, 657 F.3d 772, 778 (9th Cir. 2011) (quotation omitted). "Thus, evidence that an employer failed to reinstate an employee who was out on FMLA leave to [his] original (or an equivalent) position establishes a prima facie denial of the employee's FMLA rights." *Id.*

However, the statute provides an exception for "certain highly compensated employees," often referred to as "key" employees. 29 U.S.C. § 2614(b). To be a key employee, the individual must be a "salaried eligible employee who is among the highest paid 10 percent of the employees employed by the employer within 75 miles of the facility at which the employee is employed." *Id.* § 2614(b)(2). An employer may deny restoration to a key employee if:

> (A) such denial is necessary to prevent substantial and grievous economic injury to the operations of the employer;
> (B) the employer notifies the employee of the intent of the employer to deny restoration on such basis at the time the employer determines that such injury would occur; and

> (C) in any case in which the leave has commenced, the employee elects not to return to employment after receiving such notice.

*Id.* § 2614(b)(1).

The regulations clarify what "substantial and grievous economic injury" means. First, to deny restoration to a key employee, the employer must determine that restoring the employee to employment will cause substantial and grievous economic injury to the employer's operations, "not whether the absence of the employee will cause such substantial and grievous injury." 29 C.F.R. § 825.218(a). The employer "may take into account its ability to replace on a temporary basis (or temporarily do without) the employee on FMLA leave," but if "permanent replacement is unavoidable, the cost of then reinstating the employee can be considered in evaluating whether substantial and grievous economic injury will occur from restoration." *Id.* § 825.218(b). In other words, the employer can consider "the effect on the operations of the company of reinstating the employee in an equivalent position." *Id.*

Finally, the regulations caution that a "precise test cannot be set for the level of hardship or injury to the employer which must be sustained." *Id.* § 825.218(c). But if reinstatement "threatens the economic viability of the firm, that would constitute 'substantial and grievous economic injury,'" as would a "lesser injury which causes substantial, long-term economic injury." *Id.* "Minor inconveniences and costs that the employer would experience in the normal course of doing business would certainly not constitute substantial and grievous economic injury." *Id.*

The parties do not dispute that Douglas qualifies as a key employee. Instead, they dispute whether the defendants properly invoked the provision.

Viewing the facts in the light most favorable to Douglas on the defendants' motion, a reasonable jury could find that retaining Douglas as CFO would not cause substantial and

13

grievous economic injury to Dreamdealers. The August 2015 form indicated that the defendants found that restoring Douglas to his CFO position would result in substantial injury, yet Perisset testified he did not undertake any analysis of the issue at that time. There is no evidence anyone else at Dreamdealers did either. That determination pre-dated the audit, so it could not have been based on what the Department found. And the form gave no notice as to why restoration would cause Dreamdealers injury.

When the decision to remove Douglas from the CFO position was made a year later, the only substantial and grievous economic injury that was identified in the removal letter was Douglas's absences. But the regulations specifically preclude the employer from considering whether the employee's absence will cause the injury. A reasonable jury thus could conclude the defendants did not properly determine that retaining Douglas as CFO would cause substantial and grievous economic injury within the regulations' meaning. I therefore deny the defendants' motion on this basis.

Viewing the facts in the light most favorable to the defendants on Douglas's motion, a reasonable jury could conclude that it was Douglas's job performance failures, such as failing to pay the company's taxes, incurring tax penalties, and failing to keep orderly books and records, that posed the substantial and grievous economic injury if he were to remain as CFO.[1] ECF No.

---

[1] It is not clear that this is what the regulations mean by "substantial and grievous economic injury." The regulations appear to be directed at a situation where the employer's operational needs require replacing the employee while he is out on FMLA leave and that reinstating the employee would cause economic harm where the employer would have two highly compensated employees performing the same job. 29 C.F.R. § 825.218(b). In contrast, if the employer is harmed by an employee's poor performance, it can fire him for that poor performance, so long as FMLA leave is not also a negative factor in the decision. Thus, it is unclear whether resort to this regulation is proper in these circumstances where Douglas took intermittent leave and the defendants contend the economic harm is Douglas's alleged poor job performance. But the parties assume the key employee exemption applies and argue the facts under that exemption, so I do the same.

14

31-2 at 24. Perisset testified that not paying taxes and having inadequate accounting, especially during a time when Dreamdealers was experiencing a downturn in sales, put the company at economic risk. ECF No. 31-2 at 24-25. I therefore deny Douglas's motion on this basis.

Likewise, a jury will have to sort out issues of fact surrounding whether the position the defendants offered was equivalent. Perisset testified the new position would have similar pay, benefits, and duties. A reasonable jury thus could find the defendants offered Douglas an equivalent position. But Perisset also testified it was unclear what the job would entail. Given that the defendants curtailed Douglas's access to the company's computer system, demanded he return the company laptop, and told him he would have to commit to 40 hours a week in the office even though he had requested to recertify his intermittent FMLA leave, a reasonable jury could view the amorphous job offer as illusory. It will be up to a jury to resolve who is to blame for that equivalent position never coming to fruition after both parties took no further steps to reach an agreement on the position after the August 22 meeting. I therefore deny the parties' motions on these issues.

**C. Failure to Respond to Recertification Request**

Douglas alleges the defendants interfered with his FMLA rights by not responding to his August 2016 application to renew his FMLA leave. Douglas contends this resulted in the defendants improperly characterizing his leave as a personal leave of absence, which in turn led them to stop paying the employer portion of his health insurance premiums and "interfered with the length and date of leave." ECF No. 32 at 17. The defendants argue there is no evidence they refused to pay a portion of the health insurance or that Douglas suffered damages.

An employer who violates the FMLA is liable to the employee for damages such as lost wages, salary, or benefits; "actual monetary losses" the employee sustained "as a direct result of

15

the violation;" interest on these amounts; and liquidated damages equal to the sum of the damages plus interest. 29 U.S.C. § 2617(a)(1)(A). An employee also may obtain "such equitable relief as may be appropriate, including employment, reinstatement, and promotion." *Id.* § 2617(a)(1)(B). Even if an employer violates the FMLA, the Act "provides no relief unless the employee has been prejudiced by the violation." *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002).

Douglas does not respond to the defendants' argument that he has not shown damages arising out of the defendants' failure to recertify his FMLA leave. He does not point to evidence in the record showing that Dreamdealers ceased paying the employer portion of his health insurance premiums. He also does not point to evidence in the record showing he has suffered other damages as a result of Dreamdealers' failure to issue a decision on the recertification. Nor does he identify equitable relief that he may be entitled to as a remedy for this claim. Thus, even if Douglas has sufficient evidence to establish the defendants violated the FMLA by not acting on his recertification request, he has failed to point to evidence from which a reasonable jury could find he was prejudiced as a result. I therefore grant the defendants' motion on this claim.

**D. Retaliation**

Douglas alleges the defendants retaliated against him for opposing a practice that the FMLA makes unlawful. Douglas argues that after he communicated with the defendants through an attorney, they did not act on his recertification application and did not continue paying the employer portion of his health insurance premiums. The defendants argue that there is no evidence that they refused to pay a portion of the health insurance or failed to make a recertification decision in retaliation. Rather, the defendants contend, Douglas failed to follow

16

up on the offered new position and failed to report to work, so they placed him on a personal leave of absence. The defendants also argue that Douglas did not engage in protected activity.

In addition to prohibiting interference with FMLA rights, the Act makes it unlawful "for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C. § 2615(a)(2). The Ninth Circuit has not addressed what a plaintiff must show to establish a discrimination claim under § 2615(a)(2). *See Bachelder*, 259 F.3d at 1125 n.11 (stating that "[w]hether or not the *McDonnell Douglas*[2] anti-discrimination approach is applicable in cases involving the 'anti-retaliation' provisions of FMLA, is a matter we need not consider here"). Other circuit courts treat this type of FMLA claim like a retaliation claim under similar anti-discrimination statutes like Title VII. *See, e.g.*, *Sharif v. United Airlines, Inc.*, 841 F.3d 199, 203 (4th Cir. 2016); *Pulczinski v. Trinity Structural Towers, Inc.*, 691 F.3d 996, 1007 (8th Cir. 2012). The parties agree that this is the proper standard. *See* ECF Nos. 31 at 15 (citing *Pulczinski*); 38 at 17 (citing *Browett v. City of Reno*, 237 F. Supp. 3d 1040 (D. Nev. 2017)).

Consequently, to establish a prima facie case of retaliation under § 2615(a)(2), "a plaintiff must establish: (1) he engaged in a protected activity under the FMLA; (2) he suffered some adverse employment action by the employer following the protected activity; and (3) the adverse employment action was causally linked to the protected activity." *Browett*, 237 F. Supp. 3d at 1046. The burden then shifts to the defendant to articulate "a legitimate, nondiscriminatory reason for the adverse employment action." *Fonseca v. Sysco Food Servs. of Ariz., Inc.*, 374 F.3d 840, 849 (9th Cir. 2004). If the employer does so, then the plaintiff must show that the given reason is pretextual. *Id.* "[A] plaintiff can prove pretext either (1) indirectly, by showing that the

---

[2] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

17

employer's proffered explanation is unworthy of credence because it is internally inconsistent or otherwise not believable, or (2) directly, by showing that unlawful discrimination more likely motivated the employer." *Lyons v. England*, 307 F.3d 1092, 1113 (9th Cir. 2002) (quotation omitted).

Viewing the evidence in the light most favorable to Douglas on the defendants' motion, Douglas has presented evidence supporting his prima facie case. The evidence establishes that after the August 22 meeting, Douglas's attorney contacted the defendants. ECF Nos. 31-2 at 40; 31-5 at 39. Although neither party provided the content of that communication, given the factual context of this case it is reasonable to infer that the attorney advised the defendants that Douglas believed the defendants were taking action against him in violation of the FMLA. Douglas thus engaged in protected activity. Douglas also presents evidence of an adverse employment action because he contends the defendants failed to act on his recertification request.[3] A reasonable jury could conclude that an employer's failure to act on an FMLA recertification request "is reasonably likely to deter employees from engaging in protected activity." *Ray v. Henderson*, 217 F.3d 1234, 1243 (9th Cir. 2000) (adopting that standard in the Title VII context).

Finally, a reasonable jury could find a causal connection between Douglas's protected activity and the adverse action. The exact date of when the attorney communicated with the defendants is unclear from the record, although a reasonable jury could infer it was on or before August 26. Douglas testified that he was given until Friday (which was August 26) to get back to the defendants regarding the new position. ECF No. 31-5 at 39. He stated he did not personally get back to the company by Friday because he "advised [his] attorney to respond for"

---

[3] Douglas also relies on his assertion that the defendants refused to pay the employer portion of his health benefits, but as discussed above Douglas points to no evidence in the record supporting this assertion.

18

him. *Id.* According to Leach, the recertification decision was due August 26. ECF No. 31-4 at 19. Consequently, a reasonably jury could infer that upon being contacted by the attorney, the defendants refused to act on the recertification request.

The defendants have offered a non-discriminatory reason for their failure to decide on the recertification request. Leach testified that the decision was not due until August 26, but by then Douglas had ceased coming to work at all following the August 22 meeting, so no decision was required because he was on a personal leave of absence. ECF Nos. 31-4 at 19; 31-5 at 41.

Viewing the evidence in the light most favorable to Douglas on the defendants' motion, genuine issues remain whether this proffered reason was pretext for retaliation. A reasonable jury could find that once Douglas's attorney contacted the defendants, they refused to make a recertification decision. Perisset testified that after the attorney contacted the defendants, he never reached out to Douglas personally because "he was supposed to come back to us and we received an attorney letter instead." ECF No. 31-2 at 40.[4] Although the defendants contend they made no decision because Douglas stopped coming to work, he did so during a time when the defendants told him he was removed as CFO and could take that time to consider another equivalent position. The defendants' recertification decision was due that same Friday that Douglas was supposed to let them know his thoughts on a new position. There is no evidence the defendants contacted Douglas during that week to ask where he was or whether he was coming in to work. I therefore deny the defendants' motion on this claim.

---

[4] In his motion for summary judgment, Douglas quotes Perisset as testifying that once he got the letter from the attorney "that means the door that we had left open was closed by Mr. Douglas, not by me, so that's my interpretation of it." ECF No. 32 at 18. Although Douglas purports to quote Perisset's deposition testimony in his motion, he did not attach to his motion the deposition transcript page with this testimony. I therefore do not consider this alleged testimony.

Viewing the evidence in the light most favorable to the defendants on Douglas's motion, a reasonable jury could credit Leach's testimony that the reason the company made no recertification decision was because Douglas stopped coming to work altogether so the company placed him on a personal leave of absence. I therefore deny Douglas's motion for summary judgment on this claim.

## III.  CONCLUSION

IT IS THEREFORE ORDERED that the defendants' motion for summary judgment **(ECF No. 31) is GRANTED in part**. The motion is granted as to plaintiff Edward Douglas's claim based on the failure to respond to the recertification request. The motion is denied in all other respects.

IT IS FURTHER ORDERED that plaintiff Edward Douglas's motion for summary judgment **(ECF No. 32) is DENIED**.

DATED this 24th day of September, 2019.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE